ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| CARLOS J. BAYRON LIBOY<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2025RA00406 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: PP-369-25<br><br>Sobre: Revisión Administrativa |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de marzo de 2026.

Comparece ante *nos,* Carlos J. Bayron Liboy (Bayron Liboy o recurrente), quien se encuentra confinado en la Institución Correccional Ponce Principal Fase 4, Control M, Sección Verde y recurre por derecho propio *in forma pauperis.* En su recurso, el recurrente nos solicita que revisemos una *Respuesta al Miembro de la Población Correccional* emitida el 14 de noviembre de 2025, por la División de Remedios Administrativos (DRA) del Departamento de Corrección y Rehabilitación (DCR o recurrida) y notificada al recurrente el 20 de noviembre de 2025.

Mediante dicha determinación, el DCR concluyó que se verificó la *Hoja de Liquidación de Sentencia* y está trabajada correctamente según las leyes y reglamentos. Asimismo, el DCR determinó que la *Hoja de Liquidación de Sentencia* tiene aplicada la bonificación por buena conducta y asiduidad que está en derecho. Añadió que, en cuanto al tiempo que cumplió en libertad a prueba es el Tribunal quien emite la orden y no consta en la *Sentencia.*

Acogido el recurso presentado como uno de revisión judicial y por los fundamentos que expondremos a continuación, se *confirma* la determinación recurrida.

**I.**

Surge del expediente ante *nos* que, el 29 de octubre de 2025, Bayron Liboy presentó ante el DCR una *Solicitud de Remedio Administrativo.* En la misma, el recurrente solicitó que se revisara su *Hoja de Liquidación de Sentencia,* de forma que le aplicasen las bonificaciones correspondientes al tiempo que estuvo en libertad a prueba del 3 de abril de 2023 al 18 de julio de 2025.

Así las cosas, el 14 de noviembre de 2025, la Evaluadora de la DRA emitió una *Respuesta del Área Concernida / Superintendente.* Ese mismo día, la DRA emitió la *Respuesta al Miembro de la Población Correccional,* la cual fue notificada al recurrente el 20 de noviembre de 2025. En su determinación, el DCR concluyó que se verificó la *Hoja de Liquidación de Sentencia* y está trabajada correctamente según las leyes y reglamentos. Además, determinó que la *Hoja de Liquidación de Sentencia* tiene aplicada la bonificación por buena conducta y asiduidad que está en derecho. Agregó que, en cuanto al tiempo que cumplió en libertad a prueba es el Tribunal quien emite la orden y no consta en la *Sentencia.*

Insatisfecho, el 20 de noviembre de 2025, Bayron Liboy instó una *Solicitud de Reconsideración.* Posteriormente, el 23 de noviembre de 2025, la parte recurrida emitió una *Respuesta de Reconsideración al Miembro de la Población Correccional,* notificada el 3 de diciembre de 2025. Mediante esta, denegó la solicitud de reconsideración.

Inconforme aun, el 4 de diciembre de 2025, Bayron Liboy compareció ante *nos* mediante una *Moción en Solicitud de Revisión Administrativa* y alegó la comisión del siguiente error:

Erró el DCR al no aplicar las bonificaciones conforme lo dispone la Ley 66-2022, supra, al interpretar de manera errada el lenguaje de esta disposición de ley y la intención legislativa.

En atención a ello, el 20 de enero de 2026, emitimos una *Resolución* mediante la cual le concedimos un término de veinte (20) días a la parte recurrida para fijar posición al recurso. En cumplimiento con nuestra directriz, el 9 de febrero de 2026, el DCR, representado por la Oficina del Procurador General de Puerto Rico, presentó un *Escrito en Cumplimiento de Resolución.* Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Revisión Judicial de Determinaciones Administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247 (2008).

La Sección 4.2 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9672). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson, Passalacqua v. Quirós, Betances*, 214 DPR 370 (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer, v. A.R.Pe,* 172 DPR 254

(2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Voilí Voilá Corp., et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd*. Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra*; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transp. Sonell v. Jta. de Subastas ACT*, 214 DPR 633 (2024); *OCS v. CODEPOLA*, 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal*, 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra; Otero v. Toyota*, 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de

las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, los tribunales deben otorgar amplia deferencia a las decisiones de las agencias administrativas. Esto, en virtud de la experiencia y pericia que se presume que tienen esos organismos para atender y resolver los asuntos que le han sido delegados. Sin embargo, a la luz de *Loper Bright Enterprises v. Raimondo,* U.S., 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) y *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ___ (2025), al revisar las conclusiones de derecho los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias.

Así pues, son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Vázquez v. Consejo de Titulares, supra.* El foro judicial será quien deberá resolver todas las cuestiones de

derecho pertinentes, las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y la revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. *Íd.*

Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473 (2024); *González Segarra et al. v. CFSE,* 188 DPR 252 (2013).

Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, *supra,* las determinaciones de derecho serán revisadas en su totalidad. Sección 4.5 de la LPAU, *supra*; Torres *Rivera v. Policía* de PR, *supra,* pág. 627.

Así pues, los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Vázquez v. Consejo de Titulares*, *supra*. Pero

principalmente, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. *Íd.* Así, reiteramos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. *Íd.* Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.

### B. Bonificaciones

El Artículo II, Sección 19 de nuestra Constitución establece que será política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. II, sec. 19, Const. PR, LPRA, Tomo I. A raíz de ello, se creó el DCR mediante la aprobación de la Ley Núm. 2-2011 (3 LPRA, Ap. XVIII), también conocida como el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, según enmendado.

A esos efectos, el DCR posee la responsabilidad de implantar la política pública del sistema correccional, incluyendo lo relativo a la rehabilitación de todos los ofensores y transgresores del sistema de justicia criminal del país. Artículo 4 de la Ley Núm. 2-2011 (3 LPRA, Ap. XVIII). Por lo que, como parte de sus funciones y facultades, deberá asegurar la aplicación correcta de los sistemas de bonificación por, entre otras cosas, buena conducta. Artículo 5 de la Ley Núm. 2-2011 (3 LPRA, Ap. XVIII).

Cónsono con esto, el Artículo 11 de la Ley Núm. 2-2011 (3 LPRA, Ap. XVIII), regula lo concerniente a la rebaja de términos de sentencias de los confinados que observaren buena conducta y

asiduidad. Este Artículo fue enmendado por la Ley Núm. 87-2020, "a los fines de conceder a toda persona sentenciada bajo los Códigos Penales de 2004 y 2012 la oportunidad de recibir bonificaciones por buena conducta y asiduidad". Véase, Exposición de Motivos de la Ley Núm. 87-2020. Esto, pues, tanto el Código Penal de 2004 como el Código Penal de 2012 no contemplaron un sistema de rebajas a los términos de las sentencias por razón de buena conducta y asiduidad. *Íd.* Subsiguientemente, la Ley Núm. 66-2022 enmendó el Artículo 11 con el propósito de aclarar que las bonificaciones también les aplicaban a aquellas personas convictas que estuvieren disfrutando de los beneficios de la libertad bajo palabra. Véase, Exposición de Motivos de la Ley Núm. 66-2022.

### C. Libertad Bajo Palabra y Libertad a Prueba

Mediante la Ley Núm. 118-1974, según enmendada, "Ley de la Junta de Libertad Bajo Palabra", según enmendada (4 LPRA sec. 1501 *et seq.*), se creó la Junta de Libertad Bajo Palabra adscrita al Departamento de Corrección y Rehabilitación. Artículo 1 de la Ley Núm. 118-1974, *supra.* Dicha entidad, posee autoridad para "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico". Véase, Artículo 3 de la Ley Núm. 118-1974 (4 LPRA sec. 1503). "La libertad bajo palabra será decretada para el mejor interés de la sociedad y cuando las circunstancias presentes permitan a la Junta creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente". *Íd.* De esta forma, se permite que una persona convicta y sentenciada a un término de reclusión cumpla la última parte de su sentencia fuera de la institución penal, "sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad". *Maldonado Elías v. González Rivera,* 118 DPR 260 (1987). Al conceder el privilegio de libertad bajo palabra, la Junta puede imponer las condiciones que estime necesarias. De esta forma, el

liberado tiene una libertad cualificada, pues dichas condiciones restringen sus actividades más allá de las restricciones comunes que se le imponen por ley a cada ciudadano. *Benítez Nieves v. E.L.A. et al.*, 202 DPR 818 (2019).

De otro lado, la libertad a prueba está regulada por la Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259-1946, según enmendada (34 LPRA sec. 1026 *et seq.*). Dicha ley fue creada con el propósito de establecer "la sentencia probatoria en el sistema judicial de Puerto Rico; para disponer en qué casos deberá suspenderse el efecto de la sentencia y ponerse al sentenciado a prueba, proveyendo para ello; para fijar los requisitos necesarios que deben concurrir para la imposición de tal sentencia probatoria, y para otros fines." Véase, Exposición de motivos de la Ley de Sentencia Suspendida y Libertad a Prueba, *supra*. En ella, la Asamblea Legislativa estableció el privilegio que permite a un convicto cumplir su sentencia o parte de esta fuera de las instituciones penales. *Pueblo v. Vélez Torres*, 212 DPR 175 (2023), citando a *Pueblo v. Hernández Villanueva*, 179 DPR 872 (2010); *Pueblo v. Zayas Rodríguez*, 147 DPR 530 (1999); y, *Pueblo v. Molina Virola*, 141 DPR 713 (1996)). Véase, también, *Ruiz Matos v. Dpto. de Corrección y Rehabilitación*, 213 DPR 291 (2023), citando a *Pueblo v. Negrón Caldero*, 157 DPR 413 (2002).

En cuanto al proceso de revocación de sentencias suspendidas o libertad a prueba, el Tribunal Supremo ha resuelto que, si bien el probando no es una persona enteramente libre, una vez el Estado le confiere el derecho limitado a estar en libertad, no puede cancelarlo en abstracción a los imperativos del debido proceso de ley. *Álamo Romero v. Administración de Corrección*, 175 DPR 314 (2009), citando a *Martínez Torres v. Amaro Pérez*, 116 DPR 717 (1985).

Sin embargo, el tribunal goza de discreción para conceder la suspensión de los efectos de una sentencia y prescribir las condiciones que considere necesarias para dicha suspensión. *Pueblo v. González Olivencia*, 116 DPR 614 (1985).

Ahora bien, por mandato de ley, el esquema de justicia criminal provee un mecanismo de libertad a prueba a ser administrado por nuestros tribunales. *Martínez Torres v. Amaro Pérez*, 116 DPR 717 (1985). Es decir, será el tribunal sentenciador el que también puede revocar la libertad a prueba en cualquier momento si fuese incompatible con la debida seguridad de la comunidad o con el propósito de rehabilitación. *Martínez Torres v. Amaro Pérez, supra.*

**III.**

Bayron Liboy recurre de una determinación de la DRA mediante la cual el foro administrativo determinó que se verificó la *Hoja de Liquidación de Sentencia* y está trabajada correctamente según las leyes y reglamentos. Asimismo, determinó que la *Hoja de Liquidación de Sentencia* tiene aplicada la bonificación por buena conducta y asiduidad que está en derecho y que, en cuanto al tiempo que cumplió en libertad a prueba, es el Tribunal quien emite la orden y la misma no consta en la *Sentencia.*

Según el derecho que antecede, el reclamo del recurrente no procede puesto que el propósito de la Ley Núm. 66-2022, *supra,* es reconocer la aplicación del sistema de bonificaciones a las personas convictas que se encuentran en libertad bajo palabra y no la libertad a prueba. Esto, pues, es el foro de instancia quien viene llamado a administrar la Ley de Sentencia Suspendida y Libertad a Prueba. A esos efectos, no incidió la DRA al no aplicar las bonificaciones según la Ley Núm. 66-2022, *supra.* Pues, dicha ley solo aplica a aquellos confinados que se encuentran en libertad bajo palabra. Por

consiguiente, Bayron Liboy no tiene derecho a las bonificaciones solicitadas.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la determinación recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones